**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| EBONY HOWARD, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>IDEXX DISTRIBUTION, INC. and IDEXX LABORATORIES, INC.,<br><br>Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND** |

Plaintiff, EBONY HOWARD, individually and on behalf of all others similarly situated, by and through her attorneys BROWN, LLC and DOUGLAS MCDANIEL & CAMPO LLC, PA, hereby brings this Collective and Class Action Complaint against Defendants, IDEXX DISTRIBUTION, INC. and IDEXX LABORATORIES, INC., and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Ebony Howard (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, IDEXX DISTRIBUTION, INC. and IDEXX LABORATORIES, INC. (hereinafter referred to as "Idexx" or "Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., Nev. Rev. Stat. (hereinafter "N.R.S.") §§ 608.016, 608.018, and 608.260.

2. Defendants are an American multinational company engaged in the development, manufacture, and distribution of products and services for the companion animal veterinary, livestock and poultry, water testing, and dairy markets.

3. Plaintiff and the members of the putative collective and class were employed by Defendants as customer support workers ("CSWs"), and were responsible for handling inbound

telephone calls from Defendants' clients and customers. Some CSWs work in call centers (including in Westbrook, Maine), and other CSWs, like Plaintiff, work remotely from their home offices.

4. The U.S. Department of Labor recognizes that customer support jobs, like those held by Defendants' CSWs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert customer support employees to some of the abuses which are prevalent in the industry.

5. One of those abuses, which are at issue in this case, is the employer's refusal to pay CSWs for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

6. More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for CSWs/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

7. Defendant failed to pay CSWs for their pre-shift time spent starting up their computers, logging into required computer software applications, and reviewing work-related e-mails and other information.

8. Plaintiff seeks unpaid overtime wages and liquidated damages pursuant to the FLSA on behalf of herself and the "FLSA Collective," defined as: *all current and former CSWs who worked for either Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment*. See 29 U.S.C. §§ 207(a)(1); 216(b).

9.     Plaintiff seeks unpaid straight-time and overtime wages and liquidated damages pursuant to the N.R.S. on behalf of herself and the "Rule 23 Nevada Class," defined as: *all current and former CSWs who worked for either Defendant Nevada at any time within the two years preceding the commencement of this action and the date of judgment*. See N.R.S. §§ 608.016, 608.018.

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

11.    Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

12.    The Court has personal jurisdiction over Defendants because they are both headquartered in Westbrook, Maine.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are subject to personal jurisdiction in this district.

## PARTIES

14.    Plaintiff Ebony Howard is a resident of Henderson, Nevada, and worked for Defendants remotely from her home in Henderson, Nevada as a CSW from April 2019 to February 2020. Her job title was "Customer Support Consultant I" and her rate of pay was $18.60 per hour. Plaintiff Howard signed a consent form to join this lawsuit. (Doc. 1-1).

3

15. Defendant IDEXX DISTRIBUTION, INC. is a Massachusetts corporation whose principal address is One Idexx Drive, Westbrook, Maine, 04092, and whose registered agent for service of process in Maine is CT Corporation System, 128 State St., #3, Augusta, Maine 04330.

16. Defendant IDEXX LABORATORIES, INC. is a Delaware corporation whose principal address is One Idexx Drive, Westbrook, Maine, 04092, and whose registered agent for service of process in Maine is CT Corporation System, 128 State St., Augusta, Maine 04330.

## GENERAL ALLEGATIONS

17. Defendants employed CSWs to handle inbound telephone calls from Defendants' clients and customers.

18. Defendants classified CSWs as non-exempt employees and paid them on an hourly basis without any guaranteed, predetermined amount of pay per week.

19. In order to perform their jobs, CSWs were required to start up and log in to various computer systems and applications that were necessary for them to retrieve and process information during calls.

20. However, CSWs were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete, meaning that they performed pre-shift work for which they were not compensated.

21. The off-the-clock time CSWs spent starting up computer systems and applications directly benefitted Defendants.

22. This start-up/log-in process was an essential part of CSWs' job responsibilities.

23. At all relevant times, Defendants controlled CSWs' work schedule, duties, protocols, applications, assignments and employment conditions.

24. Despite knowing that Plaintiff and other CSWs performed work at their work stations prior to their scheduled shift time start, Defendants and their managers did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

25. Defendants possess, control and/or have access to information and electronic data that shows the times CSWs started up and logged into their computer systems and applications each day and the time they logged into their telephone systems.

26. At all relevant times, Defendants were able to track the amount of time that CSWs spent in connection with the preliminary start-up/log-in process; however, Defendants failed to pay CSWs for the preliminary start-up/log-in process in connection with each shift.

27. At all relevant times, Defendants used their adherence and attendance policies against CSWs by disciplining CSWs if they were not logged into their phones and ready to handle calls by the start of their scheduled shift time.

28. These policies coerced CSWs into beginning the process of starting up and logging into their computers systems and applications, and reading company e-mails and instructions prior to their start of their scheduled shift time.

29. Defendants required, permitted and/or allowed CSWs to work prior to their scheduled shift time.

30. At all relevant times, Defendants' policies and practices deprived CSWs of wages owed for the preliminary work activities described above. Because CSWs often worked 40 hours or more in a workweek, Defendants' pay practices also deprived them of overtime pay at a rate of 1.5 times their regular rate of pay.

5

31. Defendants are a leader in their field, employ hundreds of CSWs, and knew or should have known that CSWs' time spent in connection with the preliminary start-up/log-in process is compensable under the FLSA, N.R.S. §§ 608.016, 608.018, and 608.260.

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective, defined as:

> *All current and former CSWs who worked for either Defendant in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

33. Plaintiff reserves the right to amend this definition as necessary.

34. Excluded from the proposed Collective are Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

35. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the putative members of the FLSA Collective are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b) because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

36. The employment relationships between Defendants and every FLSA Collective member is the same and differ only by name, location, and rate of pay. The key issues – whether Defendants failed to pay CSWs for preliminary start-up/log-in time and whether such time is compensable – do not vary substantially among the FLSA Collective members.

37. Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include several hundred members. The precise number

of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 NEVADA CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of the Rule 23 Nevada Class, defined as:

> *All current and former CSWs who worked for either Defendant Nevada at any time within the two years preceding the commencement of this action and the date of judgment.*

39. Plaintiff reserves the right to amend this definition as necessary.

40. The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impractical. Rule 23 Nevada Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

41. There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class. These common legal and factual questions, include, but are not limited to, the following:

42. Whether the preliminary time Rule 23 Nevada Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time; and

43. Whether Rule 23 Nevada Class members are owed overtime (above the federally mandated overtime wages due under the FLSA) for time spent performing preliminary work activities, and if so, the appropriate amount thereof.

44. Plaintiff's claims are typical of those of the Rule 23 Nevada Class in that she and all other Rule 23 Nevada Class members suffered damages as a direct and proximate result of

the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Nevada Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nevada Class members.

45. Plaintiff will fully and adequately protect the interests of the Rule 23 Nevada Class and she has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nevada Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

47. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

48. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

49.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nevada Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nevada Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### (Brought Individually and as a Collective Action Under 29 U.S.C. § 216(b))
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME

50.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

51.     Defendants are an enterprise whose annual gross volume of sales made or business done exceeds $500,000.

52.     Defendants are an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

53.     At all times relevant to this action, Defendants were an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

54.     At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

55.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

56.     At all times relevant to this action, Defendants required Plaintiff and the FLSA Collective members to perform preliminary start-up/log-in activities before their shifts, but failed to pay these employees the federally mandated overtime compensation for all time worked.

57. The preliminary off-the-clock work performed by Plaintiff and the FLSA Collective members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

58. In workweeks Plaintiff and the FLSA Collective members worked 40 hours or more, the uncompensated preliminary start-up/log-in time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage.  29 U.S.C. § 207.

59. Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for its customer service representatives to complete the preliminary start-up/log-in process and Defendants could have properly compensated Plaintiff and the FLSA Collective members for the preliminary work they performed, but did not.

60. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Brought Individually and as a Class Action Under Fed. R. Civ. P. 23)**
**VIOLATIONS OF N.R.S. §§ 608.016, 608.018, and 608.260 – FAILURE TO PAY WAGES AND OVERTIME UNDER NEVADA LAW**

61. Plaintiff re-alleges and incorporates all previous paragraphs herein.

62. All members of the Rule 23 Nevada Class are entitled to their regular wages and/or overtime pursuant to Nevada's wage and hour laws, N.R.S. §§ 608.016, 608.018, and 608.260.

63. Defendants were "employers" and Plaintiff and the Rule 23 Nevada Class members were "employees" for the purposes of N.R.S.

64. N.R.S. § 608.016 states that an "employer shall pay to the employee wages for each hour the employee works."

65. N.R.S. § 608.018 states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages.

66. N.R.S. § 608.260 allows employees to "bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage."

67. N.R.S. § 608.140 provides employees with a private right of action to recover wages owed under N.R.S. §§ 608.016 and 608.018. *See Neville v. Eighth Judicial Dist. Court of Nev.*, 406 P.3d 499 (Nev. 2017).

68. By failing to pay Plaintiff and members of the Rule 23 Nevada Class for all of the time they worked (including a payment equal to 1.5 times their ordinary wage on that time), including the time they worked in connection with the preliminary start-up/log-in process, Defendants violated N.R.S. §§ 608.016, 608.018, and 608.260.

69. Defendants' violations of N.R.S. §§ 608.016, 608.018, and 608.260 were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

70. Defendants' actions discussed above were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the Rule 23 Nevada Class to punitive damages.

71. Defendants violated Nevada law, including N.R.S. §§ 608.016, 608.018, and 608.260 by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint. As a result, Plaintiff and the

Rule 23 Nevada Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under N.R.S. §§ 608.005 *et seq.*

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Ebony Howard, requests an entry of an Order the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

c. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representatives of the FLSA collective action Class and the Rule 23 Nevada Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants violated N.R.S. §§ 608.016 and 608.018 and that said violations were intentional, willfully oppressive, fraudulent and malicious;

g. Granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the FLSA Collective and the Rule 23 Nevada Class the full amount of damages and liquidated damages available by law;

h. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

      i.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

      j.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Ebony Howard, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

DATED: March 3, 2020

By:   */s/* Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS MCDANIEL &
CAMPO LLC, PA
90 Bridge Street, Suite 100
Westbrook, ME 04092
Phone: (207) 591-5747
tdouglas@douglasmcdaniel.com

*Local Counsel for Plaintiff*

Nicholas Conlon (will PHV)
Jason T. Brown (will PHV)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (201) 630-0000
nicholasconlon@jtblawgroup.com
jtb@jtblawgroup.com

*Lead Counsel for Plaintiff*